869 F.2d 1298
 NEW ALASKA DEVELOPMENT CORPORATION, a New York Corporation,
Plaintiff-Appellant,
v.
Bernd C. GUETSCHOW, Defendant-Appellee.
NEW ALASKA DEVELOPMENT CORPORATION, a New York Corporation, Plaintiff,
and
J. Glen Cassity, Stockholder Individually, Plaintiff-Appellant,
v.
Bernd C. GUETSCHOW, Defendant-Appellee.
NEW ALASKA DEVELOPMENT CORPORATION, a New York Corporation,
Plaintiff-Appellant,
v.
Ralph E. MOODY, personally; and State of Alaska,
Defendants-Appellees.
NEW ALASKA DEVELOPMENT CORPORATION, a New York Corporation, Plaintiff,
and
J. Glen Cassity, Stockholder Individually, Plaintiff-Appellant,
v.
Ralph E. MOODY, personally; and State of Alaska,
Defendants-Appellees.
 Nos. 87-3786, 87-3787, 87-3801 and 87-4047.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 8, 1988.
Decided March 9, 1989.
 
 J. Glen Cassity, Lynnwood, Wash., for plaintiffs-appellants.
 Bernd C. Guetschow, Anchorage, Alaska, pro se.
 Michael H. Woodell and Jean E. Kizer, Bradbury, Bliss & Riordan, Anchorage, Alaska, for Ralph E. Moody and State of Alaska.
 Appeal from the United States District Court for the District of Alaska.
 Before BEEZER, HALL and WIGGINS, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 In November 1982, appellant J. Glen Cassity's wife filed for divorce in Alaska Superior Court. On March 23, 1983, in the course of the divorce proceeding, the presiding judge, Ralph E. Moody, appointed Bernd C. Guetschow the receiver to take over Cassity's business affairs, including the management and control of New Alaska Development Corporation ("New Alaska"), a closely held New York corporation of which Cassity was the sole officer and director and the principal shareholder. This lawsuit springs from Judge Moody's appointment of Guetschow as New Alaska's receiver.
 
 
 2
 * In late 1985, Cassity and New Alaska (collectively, "appellants") initiated this litigation by commencing two suits in the District Court for the District of Alaska. One suit raised numerous claims against Guetschow based primarily on his allegedly wrongful conduct of New Alaska's affairs in the course of his receivership. The other suit sought recovery from the State of Alaska and Judge Moody based on allegations that Judge Moody made erroneous decisions in the divorce proceedings. Both complaints asserted diversity and federal question jurisdiction, seeking recovery on numerous state law and federal civil rights grounds.
 
 
 3
 * In their suit against Guetschow, appellants allege that he improperly exercised control over New Alaska's assets, "although [he was] completely devoid of jurisdiction to do so and in contravention of the due process and equal protection clauses...." Appellants' second suit against Judge Moody and the State of Alaska essentially sought to hold them liable as principals for Guetschow's alleged improprieties. Consequently, we will focus on appellants' allegations against Guetschow because these charges undergird both lawsuits.
 
 
 4
 Appellants allege that as receiver Guetschow obtained $329,000 of New Alaska's funds which he commingled with his own funds and, "through taking fees and through misappropriation," reduced to less than $50,000. Appellants also allege that Guetschow's negligence and malpractice contributed to the depletion of New Alaska's assets, and that Guetschow improperly charged $90,000 in fees for his services.
 
 
 5
 Appellants allege that in his receivership capacity, Guetschow obtained gems owned by New Alaska, which he has failed to return. The record contains an affidavit filed by Guetschow's secretary which states that the gems were stolen from Guetschow's office on July 1, 1986. This robbery came one week after Guetschow was notified of a court order that he return the gems. Appellants allege the gems to be of an unknown value. The record contains conflicting evidence on the value of the gems, ranging from $2,000 to $150,000.
 
 
 6
 The complaint further alleges that Guetschow slandered Cassity by referring to him as "my ward." Appellants also allege that Guetschow's management of New Alaska caused Cassity to suffer mental distress. Finally, appellants demand a full accounting of New Alaska's assets.
 
 B
 
 7
 The issues in this case are clouded by a somewhat complicated procedural background. The state court entered a final divorce decree on February 17, 1984, which confirmed the court's December 20, 1983, order dividing the marital estate.[1] On February 28, 1984, both Cassity and New Alaska filed voluntary petitions for bankruptcy under Chapter 11. Guetschow retained control over New Alaska's assets during the pendency of the bankruptcy proceedings, evidently with the bankruptcy court's approval.
 
 
 8
 The bankruptcy court entered a final distribution of New Alaska's estate on October 28, 1985. This order directed Guetschow to distribute $6,000 to an attorney representing New Alaska in connection with its claims against Guetschow. Appellants' brief argues that Guetschow failed to comply with this order, but the complaint does not address Guetschow's retention of this $6,000.[2] Instead, the complaint alleges that Guetschow violated his fiduciary duties by claiming $3,500 in additional fees, an amount expressly approved by the bankruptcy court.
 
 C
 
 9
 The appellees moved to dismiss in each lawsuit. The district court dismissed appellants' complaint against Moody because it found Moody to be entitled to absolute judicial immunity.[3] The district court dismissed the State of Alaska on eleventh amendment grounds, a ruling that is not appealed. Separately, the district court entered summary judgment in Guetschow's favor on a variety of grounds, including Guetschow's absolute immunity from suit as a court-appointed receiver. In addition, the district court sanctioned Cassity, relying on Federal Rule of Civil Procedure 11 in both cases and also relying on 28 U.S.C. Sec. 1927 in the case involving Guetschow. Appellants appeal the decisions of the district court in favor of Guetschow and Moody, as well as the sanctions imposed against Cassity.
 
 II
 
 10
 We review the summary judgment in favor of Guetschow and the Rule 12(b)(6) dismissal in favor of Moody de novo. See Cadillac Fairview/California, Inc. v. Dow Chemical Co., 840 F.2d 691, 693 (9th Cir.1988) (motion to dismiss for failure to state a claim); Ferguson v. Greater Pocatello Chamber of Commerce, Inc., 848 F.2d 976, 979 (9th Cir.1988) (summary judgment).
 
 III
 
 11
 Appellants alleged in their actions against Judge Moody and Guetschow that the district court had both diversity and federal question jurisdiction. In Guetschow's case, the district court expressly found that diversity jurisdiction was lacking due to appellants' failure to allege New Alaska's principal place of business. The complaint alleged that New Alaska's "principal office" was in Washington, but the only business activity alleged in the complaint was New Alaska's ownership of various real estate developments in Anchorage, Alaska. Thus, the court concluded that appellants had failed to establish diversity jurisdiction, as Guetschow was also an Alaskan citizen.
 
 
 12
 Appellants fault the district court for treating Guetschow's motion to dismiss as a motion for summary judgment. Appellants fail to appreciate, however, that the complaint itself was defective in only alleging New Alaska's principal office and not establishing that its principal place of business was not in Alaska.[4] See Bautista v. Pan American World Airlines, Inc., 828 F.2d 546, 552 (9th Cir.1987); see also Getty Oil Corp., Div. of Texaco, Inc. v. Insurance Co. of North America, 841 F.2d 1254, 1259 (5th Cir.1988); Acwoo Int'l Steel Corp. v. Toko Kaiun Kaish, Ltd., 840 F.2d 1284, 1290 n. 6 (6th Cir.1988); Jason's Foods, Inc. v. Peter Eckrich & Sons, Inc., 768 F.2d 189, 190 (7th Cir.1985).
 
 
 13
 For purposes of diversity jurisdiction, "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. Sec. 1332(c). Not only is appellants' complaint against Guetschow technically defective in failing to establish that New Alaska's principal place of business is not Alaska, but the allegations themselves indicate that New Alaska's sole place of business activity is Alaska, rendering that New Alaska's principal place of business. See Bialac v. Harsh Building Co., 463 F.2d 1185, 1186 (9th Cir.) (per curiam), cert. denied, 409 U.S. 1060, 93 S.Ct. 558, 34 L.Ed.2d 512 (1972). Consequently, the district court correctly found that appellants' claims against Guetschow were not subject to diversity jurisdiction.
 
 
 14
 While appellants' complaint against Judge Moody was similarly defective in failing to allege New Alaska's principal place of business,[5] we nonetheless conclude that the district court had subject matter jurisdiction to entertain appellants' two lawsuits. As the parties to this case are not diverse, the sole basis of subject matter jurisdiction in the district court was the alleged violations of 42 U.S.C. Sec. 1983. We do not find these allegations to be so wholly insubstantial as to have deprived the district court of jurisdiction. See Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); Matek v. Murat, 862 F.2d 720, 728 n. 12 (9th Cir.1988); Ferguson, 848 F.2d at 980.
 
 IV
 
 15
 The district court held that absolute judicial immunity shielded both Moody and Guetschow from liability. Our affirmance on the basis of absolute immunity would be dispositive, so we begin by considering the scope of judicial immunity.
 
 
 16
 * A defendant judge is immune from suit when:
 
 
 17
 at the time he took the challenged action he had jurisdiction over the subject matter before him.... [T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."
 
 
 18
 Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978) (citation omitted); see also Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir.) ("A judge loses absolute immunity only when he acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature."), cert. denied, --- U.S. ----, 109 S.Ct. 561, 102 L.Ed.2d 587 (1988); Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir.1986) (en banc) ("A judge lacks immunity where he acts in the 'clear absence of all jurisdiction,' or performs an act that is not 'judicial' in nature.") (citations omitted).
 
 
 19
 We have identified a number of factors relevant to determining whether a particular act is judicial in nature. We inquire whether:
 
 
 20
 (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity.
 
 
 21
 Id. at 1075-76. The Supreme Court's recent decision in Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), confirms our conclusion in the Ashelman decision that absolute judicial immunity protects a judge functioning in a judicial capacity. In Forrester, the Court held that a judge is not entitled to absolute immunity in performing the administrative task of dismissing a subordinate court employee. But the Court reiterated that absolute immunity is appropriate for "truly judicial acts," although it did not purport to set an all-encompassing standard defining such acts. Forrester, 108 S.Ct. at 544.
 
 
 22
 The appellants attack actions of Judge Moody that were judicial in nature. He appointed Guetschow the receiver of New Alaska in connection with a divorce proceeding pending before him. Appointing a receiver is an act normally performed by a judge, and was performed in the course of his dealings with the parties in his judicial capacity. See Holloway v. Walker, 765 F.2d 517, 520 (5th Cir.), cert. denied, 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985). Appellants seek to demonstrate, however, that Judge Moody acted in the clear absence of all jurisdiction, a recognized exception to absolute judicial immunity. They claim that he exercised authority over New Alaska although the corporation was not a party to the divorce proceeding.
 
 
 23
 Our decision in Ashelman, however, establishes that "a judge is entitled to immunity even if there was no personal jurisdiction over the complaining party." 793 F.2d at 1076. Judicial immunity is a defense so long as "the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction." Id. at 1078 (overruling Rankin v. Howard, 633 F.2d 844 (9th Cir.1980)). In Alaska, superior courts are courts of general jurisdiction and may preside over divorce proceedings. See Alaska Stat. Sec. 22.10.020 (1988). Furthermore, Alaskan state courts have broad jurisdiction in divorce matters to divide the assets of closely held corporations. See Hunt v. Hunt, 698 P.2d 1168, 1170 (Alaska 1985).
 
 
 24
 Divorce cases often engender bitterness between the litigants. Judicial immunity for cases coming within the trial judge's general subject matter jurisdiction prevents disappointed parties from targeting the judge for retribution. See Chu by Chu v. Griffith, 771 F.2d 79, 81 (4th Cir.1985). We conclude that Judge Moody's acts were not taken in the clear absence of jurisdiction. Accordingly, he is absolutely immune from appellants' suit.
 
 B
 
 25
 Judge Moody appointed Guetschow the receiver to operate New Alaska during the pendency of the divorce proceedings. Guetschow contends that he is absolutely immune from suit under the doctrine of quasi-judicial immunity.
 
 
 26
 Our case law teaches that absolute judicial immunity generally immunizes persons such as Guetschow who, pursuant to court appointment, administer the affairs of litigants. For instance, trustees appointed in a bankruptcy proceeding are afforded absolute immunity. See Mullis v. United States Bankruptcy Court for the District of Nevada, 828 F.2d 1385, 1390 (9th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988); Lonneker Farms, Inc. v. Klobucher, 804 F.2d 1096, 1097 (9th Cir.1986). In Lonneker Farms, the court reasoned that bankruptcy trustees are immune because they "perform[ ] an integral part of the judicial process." Lonneker Farms, 804 F.2d at 1097. Plaintiff in Lonneker Farms alleged that the bankruptcy trustee committed wrongful acts relating to the management of the bankruptcy estate, a farming operation. The court concluded, however, that "[i]t constitutes a waste of professional and judicial resources to divert such resources from the bankruptcy proceedings to a weak attempt to plead a claim under the civil rights statutes." Id.
 
 
 27
 Significantly, the Lonneker Farms and Mullis decisions relied upon our earlier ruling in Mosher v. Saalfeld, 589 F.2d 438 (9th Cir.1978), cert. denied, 442 U.S. 941, 99 S.Ct. 2883, 61 L.Ed.2d 311 (1979). The Mosher case involved claims against a guardian appointed by a state court to conserve the estate of an adjudged incompetent. The court found that such a court-appointed guardian, acting "in the performance of his statutory duties," was entitled to absolute derivative quasi-judicial immunity. Id. at 442; see also Coverdell v. Dept. of Social & Health Services, 834 F.2d 758, 764-65 (9th Cir.1987) (child protective services worker acting pursuant to court order entitled to absolute quasi-judicial immunity); Myers v. Morris, 810 F.2d 1437, 1466-67 (8th Cir.) (court-appointed guardians and therapists have absolute immunity in performing "quasi-judicial functions intimately related to the judicial process"), cert. denied, --- U.S. ----, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987).
 
 
 28
 While our cases have not directly addressed the immunity due a receiver appointed by a state court to manage the business assets of a marital estate during a dissolution proceeding, their rationale teaches that absolute derivative judicial immunity is appropriate. Moreover, cases from other circuits have held uniformly that state court-appointed receivers are entitled to absolute immunity. They start with the premise that "receivers are court officers who share the immunity awarded to judges." Kermit Const. v. Banco Credito Y Ahorro Ponceno, 547 F.2d 1, 2 (1st Cir.1976); see also Property Management & Investments, Inc. v. Lewis, 752 F.2d 599, 602 (11th Cir.1985); T & W Investment Co. v. Kurtz, 588 F.2d 801, 802 (10th Cir.1978); Bradford Audio Corp. v. Pious, 392 F.2d 67 (2d Cir.1968). Absent broad immunity, receivers would be "a lightning rod for harassing litigation aimed at judicial orders." Kermit, 547 F.2d at 3.[6]
 
 
 29
 To limit the harassment of receivers "as quickly as possible," a plaintiff is required to allege the absence of judicial immunity. Id. Failure to allege "that the judge's ultimate actions were not judicial or beyond the scope of the court's jurisdiction" requires dismissal. Ashelman, 793 F.2d at 1078. While appellants allege that Guetschow did not have jurisdiction to obtain New Alaska's assets, this allegation is fairly characterized as relating to personal, not subject matter jurisdiction.[7] As noted, lack of personal jurisdiction is insufficient to pierce judicial immunity. Furthermore, as a court-appointed receiver, Guetschow acted as an agent of the court and properly functioned pursuant to the court's subject matter jurisdiction by receiving and managing New Alaska's assets.
 
 
 30
 Similarly, appellants' allegations that Guetschow's fees were unjustified and that his management of New Alaska's assets was negligent are matters that Cassity should have pursued before Judge Moody. As we noted in Lonneker Farms, it constitutes a waste of precious judicial and party resources to pursue matters such as these in a collateral proceeding, rather than before the judge who appointed the receiver. Court-appointed receivers often charge fees for their services, and the appointing court is best situated to consider the fees' reasonableness. Likewise, Cassity should have challenged Guetschow's management of New Alaska's assets before Judge Moody during the divorce proceedings. Consequently, we affirm the district court's judgment in Guetschow's favor as to appellants' claims that Guetschow improperly exercised jurisdiction over New Alaska's assets, charged unreasonable fees, and mismanaged New Alaska during the divorce proceedings.
 
 
 31
 There are, however, two wrinkles which complicate the issue of Guetschow's immunity. First, appellants argue that Guetschow improperly retained New Alaska's assets long after Judge Moody entered the final divorce decree. This raises the question whether Guetschow acted in the clear absence of jurisdiction subsequent to the decree, an acknowledged exception to absolute judicial immunity.[8] Second, appellants allege that Guetschow misappropriated New Alaska's funds, slandered Cassity, and refused to return New Alaska's gems, now reportedly stolen from Guetschow's office under curious circumstances.
 
 
 32
 Malice or corrupt motive in the performance of judicial tasks is insufficient to deprive a judge of absolute immunity. See Stump, 435 U.S. at 356, 98 S.Ct. at 1104-05 (judge grants mother's petition for sterilization of daughter); Myers, 810 F.2d at 1446 (prosecutor files charges); Holloway, 765 F.2d at 522 (judge appoints receiver); Lopez v. Vanderwater, 620 F.2d 1229, 1234 (7th Cir.) (judge arraigns, convicts, and sentences defendant), cert. dismissed, 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980). By contrast, we have not heretofore found allegations of theft and slander themselves to be judicial acts.
 
 
 33
 Our decision in Ashelman instructs that a threshold inquiry is whether "the precise act is a normal judicial function." 793 F.2d at 1075. Certainly the "precise act" of a receiver pilfering corporate assets is not normally performed by a court-appointed receiver. Unlike the cases where corrupt motive underlies performance of a judicial act, the corruption appellants allege is the act itself--theft. In addition, Guetschow's alleged slander of Cassity by calling him "my ward" was not a function intimately connected with his receivership duties. Cf. Powers v. Coe, 728 F.2d 97, 103 (2d Cir.1984) (prosecutor's extraneous statements to the press entitled only to qualified good faith immunity); Marrero v. City of Hialeah, 625 F.2d 499, 505 (5th Cir.1980) (same), cert. denied, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). Accordingly, we decline to hold that Guetschow is absolutely immune from allegations that he stole New Alaska's assets or slandered Cassity.[9]
 
 V
 
 34
 We affirm the district court's order entering judgment in Guetschow's favor as to allegations of theft and slander on the alternative basis employed by the lower court. "To sustain an action under Sec. 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." Balistreri v. Pacifica Police Dept., 855 F.2d 1421, 1424 (9th Cir.1988). Guetschow does not dispute that he acted under color of state law in functioning as a court-appointed receiver in Cassity's divorce proceeding.
 
 
 35
 Appellants' allegations of intentional tortious conduct by Guetschow are insufficient to state a claim for the deprivation of property without due process of law.[10] While appellants' claim that Guetschow misappropriated funds alleges a deprivation of property, available post-deprivation state law remedies provide appellants with all the process that is due. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203-04, 82 L.Ed.2d 393 (1983); Parratt v. Taylor, 451 U.S. 527, 541-44, 101 S.Ct. 1908, 1916-17, 68 L.Ed.2d 420 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The Parratt decision is still good law on this issue. "[T]he availability of a tort suit, for defendants' random, unanticipated acts," satisfies the due process clause. Blaylock v. Schwinden, 856 F.2d 107, 110 (9th Cir.1988). Consequently, it was impermissible for appellants to bring claims concerning alleged misappropriated funds and stolen gems where state remedies were available.[11]
 
 VI
 
 36
 Lastly, we review the district court's entry of sanctions against Cassity. In reviewing Rule 11 sanctions, "(1) factual determinations are reviewed for clear error; (2) the legal conclusion that the facts establish a violation is reviewed de novo; and (3) the appropriateness of the sanction imposed is reviewed for an abuse of discretion." United Energy Owners Comm., Inc. v. United States Energy Management Sys., Inc., 837 F.2d 356, 364 (9th Cir.1988). Sanctions pursuant to section 1927 are "reviewable for abuse of discretion. The factual findings upon which a district court bases an award of sanctions are reviewable under a clearly erroneous standard." United States v. Associated Convalescent Enters., Inc., 766 F.2d 1342, 1345 (9th Cir.1985) (citation omitted).
 
 
 37
 Rule 11 prohibits " 'frivolous filings' and the use of judicial procedures as a tool for 'harassment.' " Hudson v. Moore Business Forms, Inc., 836 F.2d 1156, 1159 (9th Cir.1987) (citation omitted). "An objective standard of reasonableness is applied to determinations of frivolousness as well as improper purpose.... [B]ecause of the objective standard applicable to Rule 11 analyses, a complaint that is found to be well-grounded in fact and law cannot be sanctioned as harassing, regardless of the attorney's subjective intent." Id. (citations omitted).
 
 
 38
 Section 1927 provides for sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." The statute only authorizes sanctions against Cassity in his capacity as attorney for New Alaska, see FTC v. Alaska Land Leasing, Inc., 799 F.2d 507, 510 (9th Cir.1986), and only in an amount up to the additional expenditures incurred by Guetschow as a result of the multiplicity of the proceedings, see United States v. Blodgett, 709 F.2d 608, 610-11 (9th Cir.1983). Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith. See Estate of Blas ex rel. Chargualaf v. Winkler, 792 F.2d 858, 860 (9th Cir.1986); Barnd v. City of Tacoma, 664 F.2d 1339, 1343 (9th Cir.1982). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." Estate of Blas, 792 F.2d at 860 (citations omitted). Tactics undertaken with the intent to increase expenses, see Barnd, 664 F.2d at 1343, or delay, see McConnell v. Critchlow, 661 F.2d 116, 118 (9th Cir.1981), may also support a finding of bad faith. Even if an attorney's arguments are meritorious, his conduct may be sanctionable if in bad faith. Lone Ranger Television, Inc. v. Program Radio Corp., 740 F.2d 718, 727 (9th Cir.1984).
 
 
 39
 We believe that appellants' arguments were not so frivolous as to meet the standard applicable to Rule 11 sanctions. Our review of the record also fails to disclose evidence that Cassity "knowingly or recklessly" raised arguments that were frivolous or made for the purpose of harassment sufficient to support section 1927 sanctions. Accordingly, we reverse the district court's award of sanctions against Cassity.
 
 
 40
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 [1]
 Cassity appealed the order to the Alaska Supreme Court, which dismissed the appeal for Cassity's failure to file a timely brief
 
 
 [2]
 Guetschow refused to turn over this money on the grounds that he had an equitable lien for services rendered
 
 
 [3]
 The court also found that appellants failed to effect service within 120 days as required by Fed.R.Civ.P. 4(j)
 
 
 [4]
 Moreover, the only prejudice appellants claim is that they were unable to offer a certificate showing New Alaska to be a New York corporation in good standing. New Alaska's good standing in New York, of course, has no bearing upon its principal place of business
 
 
 [5]
 The district court did not analyze the basis of diversity jurisdiction for appellants' claims against Judge Moody and the State of Alaska. In fact, appellants' complaint is defective in this regard because it fails to allege New Alaska's principal place of business, stating only that New Alaska "now does no business in Alaska." In dismissing appellants' complaint, the district court relied upon Judge Moody's immunity to suit. We also choose to dispose of appellants' claims against Moody on the basis of judicial immunity
 
 
 [6]
 The Supreme Court's subsequent decision in Forrester does not undermine the rationale of these cases. Forrester simply acknowledged that "[r]unning through our cases, with fair consistency, is a 'functional' approach to immunity questions...." 108 S.Ct. at 542. The cases recognizing absolute immunity for court-appointed receivers are all premised on this same functional approach to immunity. The cases reason that the receiver functions as an arm of the court by making decisions about the operation of a business that the judge otherwise would have to make. A receiver operates a business only because the court has directed him to do so in connection with a case pending before the court. This situation is dramatically different from a judge's administrative hiring and firing decisions for subordinate court personnel, which have no connection to litigation pending before the court
 
 
 [7]
 Although the complaint simply alleges that Guetschow was without jurisdiction to take over New Alaska's assets, the gist of appellants' claims go to the invalidity of the state court's control over an entity incorporated in New York and never served with process
 
 
 [8]
 Appellants' brief makes extensive reference to Guetschow's retention of New Alaska's assets subsequent to both Judge Moody's entry of a final divorce decree and to appellants' emergence from bankruptcy. Appellants' complaint, however, does not specifically allege that Guetschow retained corporate assets subsequent to these events. Nonetheless, the district court was well-apprised of Guetschow's conduct and expressly treated Guetschow's motion to dismiss as a summary judgment motion. Consequently, Guetschow's continuing subject matter jurisdiction is necessarily presumed in the district court's entry of summary judgment in Guetschow's favor on immunity grounds. The only reference made in the record to Guetschow's retention of New Alaska's assets during the bankruptcy proceedings comes during a hearing where Cassity refers to the matter and states that his wife's attorneys made unspecified arrangements with the bankruptcy court. It would generally be necessary for us to remand this issue to the district court, as the record does not speak definitively to Guetschow's continuing jurisdiction. However, as indicated in section V, infra, we affirm the district court's dismissal of appellants' post-decree claims against Guetschow on the basis that they fail to state a fourteenth amendment violation
 
 
 [9]
 In the Property Management case, the eleventh circuit held that a receiver appointed by a state court to manage the affairs of a securities firm was absolutely immune from claims that he defamed the firm and converted and embezzled corporate assets during the receivership. Despite these allegations of corporate plundering, the court strictly construed a plaintiff's pleading obligations and affirmed a Rule 12(b)(6) motion to dismiss due to plaintiff's failure to "expressly allege in the complaint that [the receiver] was not acting pursuant to the orders of the appointing judge." 752 F.2d at 603. It is unclear, therefore, whether the court would have accepted plaintiff's allegations as piercing the receiver's judicial immunity had plaintiff made the further allegation concerning judicial authorization. It is far from clear why the court faulted the plaintiff for not alleging that the receiver's theft was not court-authorized. Certainly no court is empowered to permit a receiver to steal corporate assets. As we hold that appellants fail to allege proper fourteenth amendment violations in connection with Guetschow's alleged theft and slander, we need not analyze the wisdom of the Property Management court's pleading requirement
 
 
 [10]
 Appellants cite both the due process and equal protection clauses to support their federal question claims. However, appellants allege no facts supporting an equal protection claim. In addition, appellants' claims that Guetschow slandered Cassity and that he acted negligently fail to state torts of constitutional dimension. See Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Paul v. Davis, 424 U.S. 693, 702, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976)
 
 
 [11]
 Our disposition of these claims is necessarily without prejudice to appellants to pursue these matters before the state courts if remedies remain available