56 F.3d 71
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Barbara GILLEN, Plaintiff-Appellant,
v.
Darryl GATES, Police Chief; Tom Bradley; City of Los
Angeles; Robert Talcott; Herbert F. Boeckmann, II,
Defendants-Appellees.
Barbara GILLEN, Plaintiff-Appellant,
v.
Darryl GATES; Joan Flores; Joy Picus; Tom Bradley, Mayor of
Los Angeles, California; Robert Talcott; Herbert
F. Boeckmann, II; Joel Wachs; Zev Yar
Slavsky, et al., Defendants-Appellees.
Barbara Gillen, Plaintiff-Appellee,
Honey A. Lewis, Appellant,
v.
Darryl GATES, Police Chief, Defendant,
Clayton Searle, Defendant,
Patti May, Defendant.
 Nos. 93-56241, 94-55299 and 94-55657.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1995.
Decided June 1, 1995.
 
 1
 Before: SCHROEDER and KLEINFELD, Circuit Judges, and KING,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 This disposition covers three consolidated appeals in this 42 U.S.C. Sec. 1983 action. First, Plaintiff Barbara Gillen appeals from the trial court's grant of judgment as a matter of law in favor of the City of Los Angeles ("the City") on her municipal liability claim. Second, Gillen appeals the award of attorney fees under Sec. 1988, asserting that the award was too low. Third, the City appeals from an award of $1000 against the City attorney as sanctions under 28 U.S.C. Sec. 1927. We have jurisdiction under 28 U.S.C. Sec. 1291, and (1) affirm the judgment in favor of the City, (2) affirm the amount of attorney fees awarded, but (3) reverse the award of sanctions.
 
 ANALYSIS
 
 4
 * "Before a local government entity may be held liable for failing to act to preserve a constitutional right, plaintiff must demonstrate that the official policy 'evidences a deliberate indifference' to his constitutional rights." Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 388-89 (1989)). "This occurs when the need for more or different action 'is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need."' Id. at 1477-78 (citing City of Canton, 489 U.S. at 390) (internal brackets omitted).
 
 
 5
 Also, a plaintiff must prove that the policy caused the violation; the policy must be the "moving force." City of Canton, 489 U.S. at 389 (citations omitted). The custom or policy must be "closely related to the ultimate injury." Id. at 391. There must be an "affirmative link" between the custom or policy and the alleged constitutional violation. Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1984).
 
 
 6
 Here, the only evidence Gillen proffered during the trial's Monell phase was Dr. Fyfe's expert testimony. The trial court allowed Fyfe to testify based on his analysis of 3,000 citizen complaints of police searches over 15 years (the underlying data was not offered into evidence).
 
 
 7
 In its written order granting judgment as a matter of law, the court ruled that Fyfe's testimony could establish neither "deliberate indifference" nor the requisite causation. The court reasoned that
 
 
 8
 an allegation of a number of citizen complaints of illegal searches cannot amount to evidence of deliberate indifference by the LAPD, simply because no officer implicated in the complaints was ever formally disciplined. ... If the complaints do not put ... the City on notice of a problem, the lack of disciplinary actions based on these complaints cannot be proof of an official policy of tolerance of illegal searches.
 
 
 9
 The court noted that 3,000 complaints is deceptively large considering it covers 14 years of searches by a large police force, amounting to less than one complaint per officer per year.
 
 
 10
 The trial court correctly granted the City's motion. Gillen's evidence failed to prove "the existence of a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law." Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir. 1992), cert. denied, 114 S. Ct. 345 (1993) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). Fyfe's testimony concerned only a general policy. Notably, he based his opinion on all types of searches. He had no information on searches during airport narcotics investigations based on drug courier profiles. He did not testify specifically about whether the City had notice of Detective Searle's past behavior of conducting these types of searches.
 
 
 11
 Gillen also introduced no evidence of Detective Searle's disciplinary history. Gillen produced no evidence of ratification, nor of any other acts by an official policy-maker. Nor did Gillen proffer any evidence regarding Detective May. Also, as to causation, Fyfe did not testify that if the alleged custom or policy did not exist, the illegal search in this instance would not have occurred. See City of Canton, 489 U.S. at 391 ("respondent must still prove that the deficiency in training actually caused the police officers' indifference to her medical needs. Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?").
 
 
 12
 In support, however, Gillen cites to Larez. Larez is distinguishable. There, the plaintiff's theory against the City included (in addition to perpetuating a policy of excessive force) a policy of "inadequate citizen complaint procedures which have the effect of encouraging the excessive use of force." Id. at 635. Not so here. Further, in Larez the police chief (a policy-maker) testified, and other evidence besides Fyfe's opinion supported a custom and practice of excessive force. Id. at 647 ("[a]side from these allegedly flawed procedures [testified to by Fyfe], there was evidence of a departmental policy or custom of resorting to the use of excessive force."). Here, the only evidence was Fyfe's testimony. Gillen did not produce sufficient evidence, and the trial court did not err in granting judgment as a matter of law.
 
 II.
 
 13
 Alternatively, Gillen argues that if the evidence was insufficient, it was only because the trial court improperly excluded aspects of Fyfe's testimony. "The district court has wide latitude to exclude expert testimony, and we will reverse its decision only for manifest error." United States v. Soto, 1 F.3d 920, 923 (9th Cir. 1993).
 
 
 14
 The trial court excluded much of Fyfe's testimony because of inadequate foundation. The written order reasoned:
 
 
 15
 [Gillen's] case involved a particular type of search, one done at the airport by a drug task force, which specializes in creating courier profiles. Fyfe did not demonstrate that he had any specialized evidence of a particular LAPD custom of tolerating illegal searches in this area. Therefore, he lacked any foundational basis to give an opinion that the LAPD [gave] tacit approval to illegal airport searches, such as the search of [Gillen].
 
 
 16
 The court also restricted Fyfe's testimony regarding Searle because the only foundation was what Gillen's attorney told Fyfe. Basically, the court allowed general questioning based on the study of 3,000 citizen complaints, but disallowed questioning regarding Searle.
 
 
 17
 The City brought out on cross-examination that virtually none of the 3,000 complaints used in Fyfe's analysis involved airport searches. Moreover, he could not tell whether disciplinary action was taken based on the complaints. Given the vagueness of Fyfe's data on the 3,000 searches,[1] the trial court acted well within its discretion in limiting Fyfe's testimony. The court's rulings were not "manifestly erroneous."
 
 
 18
 There was also no abuse of discretion under Federal Rule of Evidence 703 in excluding Fyfe's opinion about Searle for lack of foundation, where the foundation consisted largely of summaries of citizen complaint cases provided to Fyfe by Gillen's attorney.
 
 III.
 
 19
 Gillen's attorney applied for fees under 42 U.S.C. Sec. 1988 based on the judgment of $1 in compensatory damages and $3,000 in punitive damages against the officers in their individual capacities. He claimed over $80,000 in fees based on a lodestar of 202.5 hours at $350 to $400 an hour. The court awarded fees of $16,562.50 based on 132.5 hours at $125 an hour. Gillen v. Gates, 847 F. Supp. at 1482. Gillen's attorney asserts that he should receive fees for all 202.5 hours at $400 per hour, as well as fees for this appeal. We review the award of attorneys' fees for an abuse of discretion, Davis v. City & County of San Francisco, 976 F.2d 1536, 1541 (9th Cir. 1992), vacated in part, 984 F.2d 345 (9th Cir. 1993), and affirm the award.
 
 
 20
 The court considered "the nature of the services rendered, and what a reasonable commercial client would pay" and "the relative simplicity of the issues in this case." 847 F. Supp. at 1480. The court contrasted Gomez v. Gates, 804 F. Supp. 69 (C.D. Cal. 1992)--a difficult and complex case lasting 13 weeks, involving unsympathetic plaintiffs, and exposing a policy of allowing crimes to occur and people to be victimized in order to catch criminals--with the instant case. The court set a reasonable hourly fee at $125 an hour--a reasonable "associate-level" rate.
 
 
 21
 Gillen argues that the court erred because (1) it based the $125 figure on what the City pays private attorneys for contract work and (2) that the City submitted no evidence of rates to oppose the affidavits she submitted. The district court did not abuse its discretion in applying the factors listed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) and approved by us in Davis, 976 F.2d at 1546.
 
 
 22
 Similarly, the court reduced the 202.5 hours by 70 to reflect Gillen's limited success. Gillen sought $10,000,000 in compensatory damages and $10,000,000 in punitive damages; she received $1 and $3,000 respectively. She named 28 individual defendants; she prevailed against two. And, as analyzed above, she failed on the Monell claim. The court noted that 50 hours reflected charges for issues on which she did not prevail, and 20 hours did not apply towards issues in the case. 847 F. Supp. at 1481 n.12. However, the court also reasoned that Gillen vindicated a fourth amendment right and "sent a message" to the officers. 847 F. Supp. at 1481. The reduction in hours was well-taken. We find no abuse of discretion.
 
 IV.
 
 23
 The City appeals the award under 28 U.S.C. Sec. 1927[2] of $1,000 as sanctions against assistant City attorney Honey Lewis. A sanctions order against a non-party is final and appealable. United States v. Associated Convalescent Enterprises, Inc., 766 F.2d 1342, 1345 n.1 (9th Cir. 1985). "Sanctions pursuant to section 1927 are reviewable for abuse of discretion. The factual findings upon which a district court bases an award of sanctions are reviewable under a clearly erroneous standard." New Alaska Development Corp. v. Guetschow, 869 F.2d 1298, 1305 (9th Cir. 1989).
 
 
 24
 "Sanctions pursuant to section 1927[3] must be supported by a finding of subjective bad faith." Id. at 1306; MGIC Indem. Corp. v. Moore, 952 F.2d 1120, 1122 (9th Cir. 1991). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." New Alaska, 869 F.2d at 1306 (citation omitted).
 
 
 25
 Here, the district court made no finding of bad faith. The court found that
 
 
 26
 Defense Counsel Honey Lewis is HEREBY ORDERED to pay sanctions in the amount of plaintiff's reasonable attorney's fee for responding to defendant's frivolous application for a stay of execution on the judgment against defendants Searle and May in this action and in preparing for the deposition of Searle and May, which defense counsel advised them not to attend.
 
 
 27
 Indeed, many of the court's comments during the hearing suggest quite the opposite of bad faith:
 
 
 28
 [The court]: [the sanction] is not directed to you personally... as an officer of the court, you really need to be careful about what instructions you follow without argument, because you are the person on the pleadings, and you are the person that did it, so you are the person that probably ought to be sanctioned in the mechanical function of sanction. [ER at 88].
 
 
 29
 ....
 
 
 30
 [I] must say... this notice of appeal is from a judgment which described as a jury verdict against individual officers and a Rule 50 judgment on the Monell claim. That appears to be an appeal of the judgment against the individual officers. I think that in that circumstance the defendant reasonably expected that no efforts would be made to collect that judgment since it would be a waiver of the appeal[.] [ER at 106].
 
 
 31
 ....
 
 
 32
 ... I don't know that formal sanctions directed either to [Ms. Lewis] or to Mr. Hokinson [her supervisor] in these circumstances are going to add to the administration of justice. [ER at 109].
 
 
 33
 Although the court found frivolousness, "the mere fact that [behavior] is frivolous does not of itself establish bad faith." United States v. Blodgett, 709 F.2d 608, 610 (9th Cir. 1983).
 
 
 34
 Moreover, the City's position that it was entitled to a protective order staying the taking of judgment debtor depositions of Searle and May because plaintiff Gillen had appealed the entire judgment, does not evidence bad faith. See Tennessee Valley Auth. v. Atlas Mach. & Iron Works, 803 F.2d 794, 797 (4th Cir. 1986) ("Where the prevailing party in the lower court appeals from that court's judgment, the appeal suspends the execution of the decree."). Gillen's notice of appeal did not specify that she was only appealing the trial court's ruling on the Monell claim. The reasonable interpretation of the notice of appeal was that Gillen was, among other things, dissatisfied with the award of $1 compensatory and $3,000 in punitive damages, and was appealing the judgment as well as the finding of no liability on the part of the municipality.
 
 
 35
 In lieu of a bond, the City sought to deposit a $3,000 check with the Clerk of the Court to guarantee the judgment. Although the court apparently had not yet ruled on the City's motion for protective order and offer to deposit the check with the clerk, attorney Lewis and the two officers did not appear for the deposition. Gillen's attorney had evidently refused the City's request to reschedule the depositions. Nevertheless, the City offered to pay costs for the court reporter who appeared for the deposition. Gillen has failed to make the requisite showing of bad faith, and, accordingly, we reverse the sanctions award.
 
 CONCLUSION
 
 36
 We AFFIRM the court's ruling granting judgment as a matter of law. There was insufficient evidence of a City custom and policy amounting to a deliberate indifference that was the moving force behind Gillen's illegal search. We also AFFIRM the amount of attorney's fees awarded. The amount was reasonable given Gillen's limited success. However, we REVERSE the sanctions against attorney Lewis. The court made no finding of bad faith; nor should it have. Sanctions under 28 U.S.C. Sec. 1927 were not appropriate.
 
 
 37
 KLEINFELD, Circuit Judge, concurring in part and dissenting in part.
 
 
 38
 I concur in the portions of the opinion affirming the district court's determinations. I dissent from the portion reversing the district court's determination on sanctions, and would affirm the entire judgment.
 
 
 39
 On August 18, 1993, Gillen obtained a judgment of $3,001 against two Los Angeles Police Officers. They did not pay it. Their ten day automatic stay under Federal Rule of Civil Procedure 62(a) came and went. They did not file a supersedeas bond to obtain a stay on appeal, as is required under Federal Rule of Civil Procedure 62(d). They made no application for a stay under any other provisions of Rule 62.
 
 
 40
 On January 10, Gillen's attorney sent notice to the officers' attorney, Ms. Honey Lewis, that he would take judgment debtor depositions from Clayton Searle and Patti May on February 7, 1994, and sent a letter to Ms. Lewis that the depositions would be unnecessary if the judgment was paid by February 2. Ms. Lewis responded January 21 that she and the officers would not attend. Mr. Yagman correctly reminded her that no stay of execution of the judgment had been obtained, and if there were some basis for refusing to attend, she should apply for a protective order.
 
 
 41
 On February 2, five days before the scheduled deposition, Ms. Lewis wrote to Gillen's attorney "Clayton Searle and I have bad colds and Patti May has the flu." She requested that the depositions not be taken February 7. In accord with Ms. Lewis's medical prognosis, none of the three showed up for the depositions February 7. Mr. Yagman called Ms. Lewis, found her well enough to be at her desk at work, but she told him "my secretary was out sick, the officers were sick and that I was still sick and had only come into the office in the afternoon." Mr. Yagman offered to take the depositions on any of four alternative dates, but Ms. Lewis did not agree to rescheduling.
 
 
 42
 Ms. Lewis applied ex parte February 3, the day after telling Mr. Yagman that she and the witnesses would be sick, for a protective order against the depositions until the appeal was completed, or in the alternative, for thirty days in which to deposit $3,000 with the clerk as cash in lieu of a supersedeas bond. She did not claim that she and the witnesses had colds and the flu in her application. Instead she argued, without citing authority, that execution should await disposition of the appeal. The proposed deposit would, of course, have been inadequate to secure payment of the nearly $20,000 judgment including attorney's fees, costs, and interest.
 
 
 43
 The court did not grant the relief requested by Ms. Lewis. Yet she, and the witnesses at her direction, failed to appear for the scheduled depositions.
 
 
 44
 During the hearing on the motion for sanctions, Ms. Lewis blamed her office's policy for her failure to appear at the deposition, said "this was not anything that I personally did as an individual," and she was "following the dictates of the office." Her argument was that the sanctions should be imposed on her office rather than herself. She named her supervisor, who was not present in court, and said "he is the individual who instructed me that we had to wait to pay the judgment until the attorney's fees were resolved."
 
 
 45
 Judge Letts awarded the sanctions. He correctly ruled, ""You can't just not show up, you can't ask for relief from the Court; and then not show up, you can't do that." He rejected the proposition that the defense mistakes were just bureaucratic, and found that the misconduct was willful and repeated:
 
 
 46
 These mistakes, which tend to be tossed off as bureaucratic, are repeating, and they're not bureaucratic.
 
 
 47
 The City has lost my confidence about that. These kinds of errors are not bureaucratic. Failure to show up at the deposition was not a bureaucratic mistake, it was a conscious decision, and I don't think it is one that should be ignored by the Court.
 
 
 48
 After giving the lawyers a few weeks to work out the matter informally, Judge Letts issued an order awarding sanctions against Ms. Lewis, measured by plaintiff's lawyers reasonable fee "for responding to defendant's frivolous application for a stay ... and in preparing for the deposition" which Ms. Lewis advised the witnesses not to attend. The district court awarded $1,000 in sanctions against Ms. Lewis for her actions.
 
 
 49
 Section 1927 allows the imposition of a sanction if opposing counsel lengthens the proceedings "unnecessarily and vexatiously." 28 U.S.C. Sec. 1927. Bad faith must be shown, MGIC Indemnity v. Moore, 952 F.2d 1120, 1122 (9th Cir. 1991), but knowing or reckless conduct is sufficient to meet this standard. Id.; Kanarek v. Hatch, 827 F.2d 1389 (9th Cir. 1987). Judge Letts made a well founded determination that Ms. Lewis' refusal to show up was a "conscious decision," not a "bureaucratic mistake." This finding establishes subjective bad faith on the part of Ms. Lewis. The majority reverses on the basis of the absence of a finding or showing of bad faith, but I read the judge's remark to constitute such a finding, and the facts as establishing an ample showing.
 
 
 50
 Ms. Lewis's technique for avoiding the legal duties of the defense were refusal to perform a legal duty, continued refusal even after the court did not grant a protective order, and a dubious claim of future illness. The illness claim is belied by her announcement of an intent not to appear long before illness was claimed, her claim of illness five days before the scheduled depositions, her failure to mention illness in her application to the court for a protective order, and her refusal to reschedule the depositions on one of the four dates offered by Mr. Yagman. Even if she and the officers really did have colds and influenza so badly that they could not participate in depositions, these claimed illnesses were obviously not the reasons for failure to appear, because Ms. Lewis refused to appear before illness was claimed, and refused to reschedule for a time after they would be well as suggested by Mr. Yagman. Ms. Lewis's attempt to avoid personal responsibility for her own acts is inconsistent with her duty as a lawyer to take responsibility for her own conduct and the papers she signs. Federal Rule of Civil Procedure 11(b).
 
 
 51
 These are deadbeat tactics, not legal tactics. We should affirm the sanctions.
 
 
 
 *
 The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The written order granting directed verdict also indicates that Fyfe testified that the number of citizen complaints regarding police searches did not differ dramatically from other major cities. Fyfe indicated that Los Angeles differed little from other jurisdictions in terms of the number of cases dismissed because of successful suppression motions
 
 
 [2]
 Section 1927 provides in pertinent part:
 Any attorney ... who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
 
 
 [3]
 Gillen did not assert, and the court did not invoke, the court's inherent power as a means for invoking sanctions. Rather, only Sec. 1927 is at issue