78 F.3d 592
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
BRIGHT BEGINNINGS, INC., Plaintiff-Appellant,
v.
CARE COMM, INC., Defendant-Appellee.
 Nos. 94-56130, 94-56656.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 6, 1996.
Decided Feb. 26, 1996.
 
 Before: BEEZER, BRUNETTI and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Bright Beginnings appeals the district court's (1) grant of Care Comm's motion to enforce settlement, (2) grant in part of Care Comm's motion for summary judgment and (3) award of attorney's fees to Care Comm under 28 U.S.C. § 1927.
 
 
 3
 Bright Beginnings runs preschools in the vicinity of Covina, California. Care Comm, a Kentucky Corporation, publishes newsletters and brochures about health care and child rearing. These materials are distributed by hospitals. Among its publications is a newsletter entitled "Bright Beginnings." Care Comm has contracts with some 50 hospitals throughout the United States but not with any hospitals in the area of Covina, California.
 
 
 4
 Bright Beginnings sued Care Comm for trademark infringement. Granting in part Care Comm's motion for summary judgment, the district court found Care Comm to be a remote, good faith junior user of the mark. The parties entered into settlement negotiations. After Bright Beginnings repudiated the settlement, the district court granted Care Comm's motion to enforce the settlement agreement and sanctioned counsel for Bright Beginnings.
 
 
 5
 The district court had jurisdiction under 28 U.S.C. §§ 1125(a) and 1338. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 6
 * Bright Beginnings argues that the District Court erred in granting Care Comm's motion to enforce settlement. After hearing the testimony of the principals and the attorneys, the district court concluded that the parties intended to be bound by their agreement prior to its finalization in a written contract. The court based this determination in part upon its assessment of the credibility of the witnesses. The court concluded that the explanations offered by Bright Beginnings to show that there was no agreement were largely "pretextual and contrived after the fact."
 
 
 7
 The district court's decision whether to enforce a settlement agreement is reviewed for abuse of discretion. Maynard v. City of San Jose, 37 F.3d 1396, 1401 (9th Cir.1995). Reversal is appropriate only if the district court based its decision "on an error of law or clearly erroneous findings of fact." United States v. Oregon, 913 F.2d 576, 580 (9th Cir.1990), cert. denied, 501 U.S. 1250 (1991).
 
 
 8
 Bright Beginnings argues that we should apply a de novo standard because there is no dispute of fact over the contents of the written proposals and counter-proposals between the parties. This argument lacks merit because the district court found factual disputes to exist concerning the parties' intent to be bound and concerning the terms to which Bright Beginnings had agreed. One critical document referenced oral negotiations. The district court properly held an evidentiary hearing because the existence and terms of the settlement agreement were disputed. Callie v. Near, 829 F.2d 888, 890 (9th Cir.1987). We review trial court findings for clear error. L.K. Comstock & Co. v. United Engineers & Constructors, Inc., 880 F.2d 219, 221 (9th Cir.1989).
 
 
 9
 * Under California law,[1] parties may require further assent before being bound to an agreement. Beck v. American Health Group Int'l, Inc., 211 Cal.App.3d 1555, 1562 (1989). Whether further assent is required depends upon the objective intent of the parties, as demonstrated by their words and conduct. See id.; In re Pago Pago Air Crash, 637 F.2d 704, 706 (9th Cir.1981).
 
 
 10
 The district court found that the parties intended to be bound by their agreement and to use their attorneys to draft the final document. This finding is not clearly erroneous. It has substantial support in the record of the evidentiary hearing, where Bright Beginnings President Robert Orsi testified that he told Care Comm President Mary Anne Arnold that they should take the leadership role in settlement. One of his memoranda states: "While we must both rely on the advice of our councils (sic), let us not miss an opportunity to assert our business judgment on this issue." Most important is Orsi's final memorandum to Arnold, where he states:
 
 
 11
 My attorney has advised me that both sides are in agreement as to all deal points. There are some matters of language yet to be resolved. Based on our discussions and the representations made to my attorney, I feel comfortable that we can finalize the agreement as negotiated. I therefore agree to extend the settlement deadline....
 
 
 12
 (emphasis added). Orsi's reference to "matters of language" and to the existence of a negotiated agreement weigh heavily in favor of the district court's finding that his objective intent was to be bound by the settlement.
 
 
 13
 Bright Beginnings points out that Keven Hayworth, an attorney for Care Comm, labelled the settlement agreements he sent to Joseph Golant, counsel for Bright Beginnings, "draft" and "proposed." These labels do not undermine the district court's finding that the principals had already reached a binding agreement; they merely indicate that the lawyers had not yet finalized the specific language.
 
 
 14
 We find no clear error in the district court's determination that the parties intended to be bound by their agreement prior to placing their signatures upon settlement documents.
 
 B
 
 15
 In addition to intending to be bound, the parties must also have reached agreement on all essential terms. The settlement agreement must be complete. Callie v. Near, 829 F.2d 888, 890 (9th Cir.1987). Acceptance of an offer is effective only when it is unconditional. In re Pago Pago Air Crash, 637 F.2d at 706. If an acceptance modifies the terms of the offer, it constitutes a qualified acceptance and a new proposal. Id. There is no contract unless the new proposal is accepted. Id.
 
 
 16
 The district court found that Orsi wanted to settle for three reasons. First, he wanted to stop incurring legal fees. Second, he wanted to preclude Care Comm from using the mark in his territory in such a way as to cause confusion or impugn his company's reputation. Finally, he wanted protection for his mark. The district court concluded that Orsi set out these and other requirements in his memoranda and that he received what he wanted. The court noted that each requirement was included in the draft agreements.
 
 
 17
 Bright Beginnings points to several disagreements between the parties, arguing that they never agreed on all essential terms. First, Bright Beginnings argues that it never agreed to seek the vacating of the court's prior summary judgment ruling. This argument on appeal, like Golant's similar testimony before the district court, is undermined by the recording of Golant's voicemail message to Hayworth, Care Comm's attorney, where Golant states: "The first paragraph ought to be 'the Court's entry of summary judgment is hereby vacated,' so that it applies to both sides of the summary judgment." Clearly, Golant did agree to this provision.
 
 
 18
 Bright Beginnings also argues that it would never have agreed to the language of the survivorship clause because the clause had no legal effect. Another recording from Hayworth's voicemail contradicts this argument. Hayworth's voicemail recorded Golant offering the exact language for the clause, which was incorporated into the settlement draft.
 
 
 19
 Bright Beginnings also argues that Orsi's February 8 and 11 memoranda include a demand that the litigation cease while the settlement is reached. Orsi stated his intent on February 11 to seek funds from Care Comm's insurer to compensate him for his litigation costs if a settlement was not reached. Bright Beginnings argues that Golant's repeated demands for money indicated that an agreement had not been reached.[2]
 
 
 20
 These arguments lack merit. It is clear from the record that by his settlement deadline Orsi hoped to avoid responding to Care Comm's motion for reconsideration. In fact, counsel for Bright Beginnings filed the response on the settlement deadline date, making it impossible for Orsi to avoid this cost even if Care Comm had continued the motion on February 11. Moreover, Orsi listed the additional cost of responding to the motion at about $10,000, not the $300,000 subsequently demanded by his attorney.
 
 
 21
 Orsi's February 11 memorandum to Arnold indicates agreement to all deal points "based upon our discussions and the representations made to my attorney." Nowhere in the record does Orsi or Golant claim that the discussions between the parties or the representations by Hayworth included an offer of money by Care Comm. This fact excludes the possibility that Orsi demonstrated any objective expectation of a monetary payment when he characterized the agreement and agreed to extend the date for finalization of the settlement.[3]
 
 
 22
 We find no clear error in the district court's findings of fact.
 
 C
 
 23
 Bright Beginnings argues that even if an agreement did exist, it is barred by the statute of frauds. The statute of frauds applies to settlement agreements. Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 800 (9th Cir.1991). The California statute, Cal.Civil Code § 1624(1), provides that an oral contract not to be performed within one year of its making must be in writing and subscribed by the party to be bound.[4] If by its terms the contract could possibly be performed within one year, it does not fall within the statute even though it will probably extend beyond one year. Hopper v. Lennen & Mitchell, 146 F.2d 364, 366-67 (9th Cir.1944).
 
 
 24
 The final draft agreement contained a provision that if either party abandoned the mark, that party's trademark rights would be assigned to the other party. Orsi's first proposal stated that the assignment would occur one year after either company ceased to operate. The possibility of performance within one year did exist if either party immediately abandoned the mark or went out of business. The statute's use of the term "within" excludes from its coverage contracts for exactly one year. Columbia Pictures v. De Toth, 161 P.2d 217, 219 (Cal.1945).
 
 
 25
 We find no abuse of discretion and affirm the district court's enforcement of the settlement agreement. For this reason, we do not reach Bright Beginning's appeal of the district court's summary judgment order.
 
 II
 
 26
 We review sanctions imposed pursuant to 28 U.S.C. § 1927 for abuse of discretion. Air Separation, Inc. v. Lloyd's of London, 45 F.3d 288, 291 (9th Cir.1995). We review factual findings upon which a district court bases sanctions for clear error. New Alaska Development Corp. v. Guetschow, 869 F.2d 1298, 1305 (9th Cir.1989).
 
 
 27
 The statute allows a district court to award excess costs and attorney's fees reasonably incurred due to the unreasonable and vexatious multiplication of the proceedings by an attorney. 28 U.S.C. § 1927. A district court must support the sanction order with a finding of subjective bad faith. New Alaska, 869 F.2d at 1306.
 
 
 28
 Golant argues that he should not be sanctioned for arguing that the parties had not reached a binding agreement, citing Trident Center v. Connecticut General Life Ins., 847 F.2d 564 (9th Cir.1988). In that case, this court reversed an award of sanctions under Rule 11. 847 F.2d at 570. Unlike sanctions under Rule 11, sanctions under section 1927 do not require a frivolous filing; they require bad faith, obstructive conduct. Lone Ranger Television, Inc. v. Program Radio Corp., 740 F.2d 718, 727 (9th Cir.1984).
 
 
 29
 The district court found that Golant had acted in bad faith by inserting a $300,000 cash demand into a settlement agreement that had included no monetary payment. This finding was not clearly erroneous, particularly in light of Golant's disingenuous testimony before the district court. Because the court did not abuse its discretion in awarding sanctions based upon its holding that Golant's conduct vexatiously multiplied the proceedings, we affirm the sanction award.
 
 III
 
 30
 We deny Care Comm's motion for attorney's fees on appeal. The arguments Golant raises on appeal are not frivolous. Moreover, the district court's sanctions award was calculated to punish Golant for his bad faith repudiation of the settlement agreement. It is sufficient penalty.
 
 
 31
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The construction and enforcement of settlement agreements are governed by the principals of local contract law, even if the underlying cause of action is federal. United Commercial Ins. Serv. Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir.), cert. denied, 113 S.Ct. 660 (1992). Here, California law governs
 
 
 [2]
 Golant gave Hayworth several different rationales for the $300,000 payment, changing them as Hayworth refused each one. Reflecting a possible motivation for this demand, Golant testified at the evidentiary hearing that he and Orsi had a contingency fee arrangement for 50% of any recovery, and Orsi testified that he owed Golant in excess of $100,000
 
 
 [3]
 The other disagreements raised by Bright Beginnings were nonessential and were all resolved in its favor by the end of the drafting process
 
 
 [4]
 Care Comm argues that the parties' memoranda satisfy the writing requirement, but the listing of Orsi's name after "From:" on the top of his memoranda does not show the required intent to adopt the name as a signature. See Marks v. Walter G. McCarty Corp., 33 Cal.2d 814, 820 (1949)