**Donald L. MEEK, Plaintiff–Appellee,**

v.

**COUNTY OF RIVERSIDE, Defendant,**

and

**Albert J. Wojcik, Judge, Riverside Municipal Court; Rodney Walker, Judge, Riverside Municipal Court, Defendants–Appellants.**

No. 97–56531.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1999.

Filed June 24, 1999.

Marc J. Poster, Greines, Martin, Stein & Richland, Beverly Hills, California, for the defendants-appellants.

George W. Shaeffer, Jr., Breon & Shaeffer, Irvine, California, for the plaintiff-appellee.

Before: FERGUSON, BRUNETTI, and T. G. NELSON, Circuit Judges.

Opinion by Judge BRUNETTI; Dissent by Judge FERGUSON.

BRUNETTI, Circuit Judge.

Donald L. Meek brought a section 1983 action against the County of Riverside and two municipal court judges alleging that his First Amendment right to campaign for public office had been violated when he was constructively fired in retaliation for his seeking election to a municipal court judgeship. The defendants moved to dismiss the complaint for failure to state grounds upon which relief can be granted. The district court denied the individually named defendants' motion to dismiss finding that they were not entitled to judicial immunity and that the determination of whether a court commissioner has a First Amendment right not to be fired for political reasons could not be made on the record before it. This appeal followed. We have jurisdiction over the district court's denial of judicial immunity pursuant to 28 U.S.C. § 1291, and we affirm. Because the denial of the claim that Meek does not have a First Amendment right not to be terminated for political reasons is not a final order, we lack jurisdiction to review the district court's resolution of the issue at this stage of the litigation and therefore dismiss, in part, the appeal.

## I.

Meek was appointed a Commissioner of Municipal Court of the County of Riverside, California, in 1989 and, during his tenure, was assigned primarily to the Mt. San Jacinto Judicial District. In September of 1995, Meek learned that two vacancies on the Riverside Municipal Court would occur in March and April of 1996. One of the seats was to be filled by a nonpartisan election and the other by a gubernatorial appointment. Meek approached then-Commissioner Albert J. Wojcik about an arrangement whereby Meek would support Wojcik in the March, 1996, non-partisan election for the first vacant seat and Wojcik would support Meek in his efforts to obtain a gubernatorial appointment to the second seat.

Shortly after his meeting with Wojcik, Meek concluded that Wojcik would not support him in his effort to obtain the gubernatorial appointment. He also learned that Municipal Judge Curtis R. Hinman had written a letter to Governor Wilson supporting Sherill Nielsen, a close friend and associate of Municipal Judge Rodney Walker, for appointment to the municipal court. Deciding that he had little chance of obtaining the appointment, Meek chose to run against Wojcik in the March election. During the campaign, Judge Walker allegedly stated that he would fire Meek from his position of court commissioner if Meek lost the election and that he considered Meek his political enemy.

On March 26, 1996, Wojcik was elected judge of the Mt. San Jacinto Municipal Court and he took office on April 23, 1996. On April 4, 1996, then-Commissioner Wojcik, Judge Walker, and Judge Hinman met and held a vote on whether Meek should be terminated. Wojcik and Walker voted to fire Meek and Judge Hinman abstained.

On April 8, 1996, Judge Hinman informed Meek of the vote to dismiss and told him that he would be fired if he did not resign by April 12, 1996. Judge Hinman informed Meek that he had a right to a hearing before Wojcik and Walker but that "it would do no good, because the outcome would be the same." In lieu of termination or resignation, Meek elected to retire on April 8, 1996.

Meek filed a section 1983 suit against Wojcik, Walker, and the County of Riverside claiming that he had been fired in retaliation for exercising his First Amendment right to run and campaign for office. Claiming judicial and political immunity, Wojcik and Walker moved to dismiss the complaint for failure to state grounds upon which relief can be granted.[1] The district

1. The County also moved to dismiss the complaint. The district court granted the County's motion, finding that the County was not responsible for the conduct of municipal court judges. The County is not a party to this appeal.

court denied Wojcik and Walker's motion to dismiss. The district court found that Wojcik and Walker were not entitled to judicial immunity because the challenged action was administrative rather than judicial in nature. The district court further found that Wojcik and Walker acted in complete absence of jurisdiction when they constructively fired Meek and that therefore such action was not protected by judicial immunity. The district court also refused to dismiss the complaint on the ground of "absolute political immunity" because it found that it could not resolve on the record before it the issue of whether Meek had a First Amendment right to not be terminated from his position as court commissioner for political reasons.

## II.

### A. Judicial Immunity

■ Wojcik and Walker claim that the district court erred in its ruling on absolute judicial immunity. Although a district court's denial of a 12(b)(6) motion generally is not a reviewable final order, the denial of a claim of absolute judicial immunity is immediately appealable under the collateral order doctrine and we review the district court's denial de novo. *Figueroa v. United States,* 7 F.3d 1405, 1408 (9th Cir.1993); *Nixon v. Fitzgerald,* 457 U.S. 731, 741–43, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). On review, the facts alleged in the complaint are assumed to be true and are construed in the light most favorable to the plaintiff. *Jensen v. Oxnard,* 145 F.3d 1078, 1082 (9th Cir.1998). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ It is well settled that judges are generally immune from civil liability under section 1983. *Mireles v. Waco,* 502 U.S. 9, 9–10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (citing long line of cases acknowledging that "generally, a judge is immune from a suit for money damages."). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' " *Id.* at 10, 112 S.Ct. 286 (citing *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871)).

■ A judge is not deprived of immunity because he takes actions which are in error, are done maliciously, or are in excess of his authority. *Stump v. Sparkman,* 435 U.S. 349, 355–56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The rationale for granting judges immunity from liability for even intentional and malicious conduct while acting in their judicial capacity is that judges should be free to make controversial decisions and act upon their convictions without fear of personal liability. *Id.* at 363–64, 98 S.Ct. 1099. The concern for principled and fearless decision-making forms the basis for judicial immunity. *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Absolute judicial immunity, however, is only granted when essential to protect the integrity of the judicial process. *Forrester v. White,* 484 U.S. 219, 224–29, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (noting that courts have been hesitant to find or extend absolute official immunity).

■ There are two situations in which judges are not absolutely immune from liability arising out of official conduct. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles,* 502 U.S. at 11–12, 112 S.Ct. 286 (citations omitted); *see also, Schucker v. Rockwood,* 846 F.2d 1202, 1204 (9th Cir. 1988) ("A judge loses absolute immunity only when he acts in the clear absence of all jurisdiction or performs an act that is

966

not judicial in nature."); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir.1986) (en banc) ("A judge lacks immunity where he acts in the clear absence of all jurisdiction, or performs an act that is not judicial in nature.") (internal quotation marks and citations omitted).

The district court found that appellants were not entitled to judicial immunity because the challenged action, their decision to constructively terminate Meek, was an administrative rather than a judicial act. "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362, 98 S.Ct. 1099.

A state court judge is generally not entitled to absolute immunity from liability arising out of a decision to fire a subordinate judicial employee because the decision is not a judicial or adjudicative act, but rather an administrative one. *Forrester*, 484 U.S. at 229, 108 S.Ct. 538. In *Forrester*, a former probation officer filed a damage action against a state judge alleging that the judge had demoted and fired her on account of her gender in violation of the Equal Protection Clause of the Fourteenth Amendment. In determining the scope of judicial immunity, the Court stressed that the focus must be on the function that the immunity protects. *Id.* at 227, 108 S.Ct. 538. Judges are granted absolute immunity for their judicial actions in order to safeguard independent and principled judicial decision making. *Id.* at 226–27, 108 S.Ct. 538. Although a judge's employment decisions "may be essential to the very functioning of the courts," they are not the type of decisions that traditionally have been regarded as judicial acts meriting absolute immunity. *Id.* at 228–29, 108 S.Ct. 538. The Court noted that there was no principled reason for according judges absolute immunity for administrative personnel decisions when executive branch officials are

not accorded absolute immunity for their employment decisions. *Id.* at 229–30, 108 S.Ct. 538. The Court found that the danger of judges being deflected from the effective performance of their duties by the threat of suit from disgruntled employees was not great enough to justify the extension of absolute judicial immunity to these situations. *Id.* at 230, 108 S.Ct. 538.

Appellants argue that *Forrester* is distinguishable because a court commissioner, unlike a probation officer, plays an inherent role in the judicial decision making process. Due to the judicial nature of the duties assigned to a court commissioner, appellants argue, the decision to fire a court commissioner is inherently judicial. Appellants, however, can point to no case in which a court evaluated the nature of the services provided by a fired employee to determine whether the decision to terminate was judicial. Moreover, the cases upon which appellants rely for the proposition that some employment decisions are so closely related to the judicial decision-making process that they are judicial acts do not provide real support for this contention. For example, appellants cite *Cameron v. Seitz*, 38 F.3d 264 (6th Cir.1994), for the proposition that the appointment of certain personnel is an inherent part of the judicial decision-making process. In *Seitz*, the Sixth Circuit found that a probate judge who refused to consider a probate caseworker's recommendations on the disposition of particular cases, reassigned the employee's cases to other caseworkers, and barred the employee from appearing in his courtroom was absolutely immune from civil liability for claims arising out of this conduct. *Id.* at 270–72. In deciding that the contested actions were judicial, the Sixth Circuit did not focus on the role that the caseworker played in the judicial process. Instead, the court focused on the nature of the challenged actions and found that the actions involved either the disposition of particular cases or control of the judge's courtroom. *Id.* at 271–72. Because both of these actions are inherently judicial in nature, the court ruled that the

probate judge was shielded by judicial immunity. *Id.*

Similarly, in *New Alaska Development Corp. v. Guetschow*, 869 F.2d 1298 (9th Cir.1989), upon which appellants also rely, we held that the appointment of a receiver for a particular case was a judicial act. Again, we focused on the fact that the appointment at issue was made in the context of a pending case and in the course of the judge's dealing with the parties in his judicial capacity. *Id.* at 1302. In making the determination that the judge was acting in his judicial capacity, our decision turned on the nature of the judge's action not on the role that the receiver played in the judicial process.

A review of the federal cases describing the ambit of judicial immunity indicates that, in determining whether a particular action is judicial in nature, a court needs to focus on the relationship between the action and the adjudicative process.[2] In *New Alaska*, we identified the following factors as relevant to the determination of whether a particular act is judicial in nature:

(1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out

of a confrontation with the judge in his or her official capacity.

*New Alaska*, 869 F.2d at 1302 (citing *Ashelman v. Pope*, 793 F.2d at 1075–76). As the district court correctly noted, consideration of these factors here indicates that the challenged action was not a judicial action. The district court found:

First, the decision to terminate plaintiff was an administrative decision, rather than a judicial act, because it involved the termination of an employee, and not a decision in a matter pending before the court. Second, although it is unclear whether the vote to terminate plaintiff took place in a judge's chambers, it did not occur while the court was in session. Third, the controversy centered, not on a case, but on plaintiff's efforts to seek the same judicial office as then-Commissioner Wojcik in the April, 1996 election. Finally, according to the allegations of the complaint, the decision to terminate plaintiff was a response to his campaign for judicial office and had nothing to do with plaintiff's performance or decision in a particular case.

*Meek*, 982 F.Supp. 1410, 1417 (C.D.Cal. 1997) (internal citations omitted). The district court did not err in finding that an evaluation of the *New Alaska* factors indicates that it is not essential to insulate judges' employment decisions regarding

---

2. Following are examples of cases in which courts have found a challenged action to be judicial in nature: *Mireles*, 502 U.S. at 12–13, 112 S.Ct. 286 (judge's action of ordering the police to bring an attorney before him was judicial); *Stump*, 435 U.S. at 362–64, 98 S.Ct. 1099 (judge's approval of a mother's ex parte petition to have her "somewhat retarded" daughter sterilized was judicial); *Bradley*, 80 U.S. (13 Wall.) at 354 (disbarring an attorney as a sanction is a judicial action); *Burns v. Reed*, 500 U.S. 478, 492, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (issuance of a search warrant is unquestionably a judicial act); *Ireland v. Tunis*, 113 F.3d 1435 (6th Cir.1997) (issuance of an arrest warrant is a judicial act); *Crooks v. Maynard*, 913 F.2d 699 (9th Cir. 1990) (a judge's decision to hold two employees in contempt of court is a judicial act).

Following are examples of cases in which courts have found a judge's action to be non-

judicial and therefore not protected by judicial immunity: *Richardson v. Koshiba*, 693 F.2d 911 (9th Cir.1982) (act of appointing state judges involves an executive not a judicial act); *Goodwin v. Circuit Court of St. Louis County, Mo.*, 729 F.2d 541 (8th Cir.1984) (decision to remove a hearing officer was an administrative rather than a judicial act); *Guercio v. Brody*, 814 F.2d 1115 (6th Cir. 1987) (judge not shielded by judicial immunity for act of firing confidential personal secretary); *McMillan v. Svetanoff*, 793 F.2d 149 (7th Cir.1986) (firing court reporter is not a judicial act); *Harper v. Merckle*, 638 F.2d 848 (5th Cir.1981) (holding a contempt proceeding and ordering plaintiff incarcerated were not judicial acts where controversy that led to incarceration did not center around any matter pending before the judge, but around domestic problems of plaintiff's former wife who worked at the courthouse).

court commissioners in order to protect the integrity of the judicial process.

Appellants' decision to fire a subordinate judicial employee is an administrative decision; the district court did not err in finding that appellants are not entitled to judicial immunity for such actions.[3]

## B. "Absolute Political Immunity"

### *Jurisdiction*

Appellants claim that we have jurisdiction to review the district court's order denying their motion to dismiss based on a claim of "absolute political immunity" under the collateral order doctrine. The collateral order doctrine allows an appellate court to hear interlocutory appeals under 28 U.S.C. § 1291 from a "small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Orders denying a claim of immunity are generally immediately appealable where the immunity guarantees a right not to stand trial. *See, e.g., Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 870–71, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); *Alaska v. United States*, 64 F.3d 1352, 1354–55 (9th Cir. 1995).

The Supreme Court has stressed, however, that the collateral order doctrine is a narrow exception to the general rule "that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Digital Equipment*, 511 U.S. at 868, 114 S.Ct. 1992. Jurisdiction of this court does not depend upon a party's ability to characterize a right as a

"right not to stand trial" as "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial.'" *Id.* at 873, 114 S.Ct. 1992. To assess whether we have jurisdiction to review the district court's resolution of this issue under the collateral order doctrine, we focus on the nature of the right asserted by appellants.

Appellants claim that because Meek served in a policy-making position, they have "absolute political immunity" from liability arising out of their decision to fire him for political reasons. They in essence aver that Meek does not have a First Amendment right not to be fired from the position of court commissioner for political reasons and that therefore they can not be held liable for taking such action. Appellants do not explain, however, how Meek's lack of a protected right clothes them with a right not to stand trial. As Meek correctly avers, this claim of political immunity, as presented by appellants, is a right to prevail at trial rather than a right to be free from trial.

Appellants contend that case law establishes that they have a right not to stand trial for claims arising out of their decision to fire a public employee who holds a policy-making position. The cases on which appellants rely, however, are distinguishable from the present case. For example, neither *Fazio v. San Francisco*, 125 F.3d 1328 (9th Cir.1997), nor *Newman v. Voinovich*, 986 F.2d 159 (6th Cir.1993), involved interlocutory appeals where appellate jurisdiction was premised on the collateral order doctrine; both cases: rather involved appeals from a district court decision to *grant* a 12(b)(6) motion. In *Fazio*, the district court certified the First Amendment claim for immediate appeal and this court granted Fazio's motion for interlocutory appeal. This court's jurisdiction in the case was therefore under 28 U.S.C. § 1292(b) rather than 28 U.S.C.

---

3. The district court also found that appellants acted in complete absence of jurisdiction when they fired Meek and that therefore they were not entitled to judicial immunity for this action. Because the decision to fire a subordinate employee is not a judicial act, we do not reach this issue.

§ 1291. *Fazio*, 125 F.3d at 1330. *Newman* involved an appeal from a final order reviewable pursuant to 28 U.S.C. § 1291 because the challenged district court order dismissed all of plaintiff's claims. *Newman*, 986 F.2d at 160.

Moreover, neither *Fazio* nor *Newman* hold that an official is immune from liability arising out of a decision to fire a policy-making employee. In *Fazio*, we found that a public employee who holds a policy-maker position can be fired for political reasons without offending the Constitution and that we did not need to address the issue of whether the defendants were entitled to "qualified immunity" because there was no First Amendment violation. 125 F.3d at 1334. Similarly, the Sixth Circuit in *Newman* found that the First Amendment did not prevent a governor from considering political affiliations in making judicial appointment because judges are policy-makers. 986 F.2d at 163. Again, the court did not premise its decision on a finding that the governor was immune from liability but rather that the governor's actions did not result in a First Amendment violation.

A natural reading of appellants' claim of absolute political immunity indicates that appellants are claiming a right to succeed at trial rather than a right not to stand trial. Therefore, this claim is a defense the denial of which is not reviewable under the collateral order doctrine. *See e.g., Alaska*, 64 F.3d at 1355–56; *Digital Equipment*, 511 U.S. at 871–77, 114 S.Ct. 1992; *Van Cauwenberghe v. Biard*, 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988).

AFFIRMED IN PART and DISMISSED IN PART. COSTS TO APPELLEE.

FERGUSON, Circuit Judge, dissenting:

I dissent from the majority's disposition of this case for one simple reason: Donald Meek was not constructively fired. Therefore, he cannot maintain a § 1983 action in federal district court, and we must dismiss his case.

In § 1983 actions, the preliminary focus must be whether or not the alleged wrongful act involved state action. *Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 550 (1974) (en banc). If it does not, then we as federal courts do not have jurisdiction, *see* 28 U.S.C. § 1343(a)(3), and we need not even pass on the immunity issues reached in the majority's opinion.

In § 1983 claims, we look to state law to determine if there in fact has been state action. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) ("[T]he deprivation must be caused by the exercise of some right or privilege created by the State."). California law clearly states that a majority of the twenty-one municipal court judges in Riverside are the only people who have the authority to hire and fire court commissioners such as Meek. Cal. Gov't Code § 72192 (providing that the commissioner "shall be appointed by and hold office at the pleasure of a majority of the judges ..."). Individual judges may become upset with a commissioner for personal reasons, such as the politics in this case. But the state has decreed that individual judges do not have the right to terminate the commissioners; rather, state action must come from the body of judges as a whole. District Judge Paez was correct in finding that "Judge Walker had no authority to terminate plaintiff solely on his own vote because plaintiff served at the pleasure of a majority of the judges of the municipal courts in Riverside County." *See Meek v. County of Riverside*, 982 F.Supp. 1410, 1418 (C.D.Cal.1997). Without any action here by the entire body of municipal court judges, there is no state action, and we need not even address the immunity issues.

Donald Meek's resignation is not material in this case and cannot form the basis of a constructive discharge claim under § 1983 because no rational juror could conclude that Meek acted reasonably in resigning when only one of the eleven people needed to fire him had acted. *See Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir.1987) (requiring resignation to be

reasonable in order to prove a constructive firing claim). Meek's unreasonable resignation and lack of understanding of his rights under California law do not create state action or a constitutional tort, and he has no § 1983 claim. I therefore respectfully dissent.