Linsey Kay HOWELL, Plaintiff,

v.

Thomas HOFBAUER, individually and in his official capacity as a Deputy of the Webster County Sheriff, Charles Griggs, Sheriff of Webster County, Webster County, and Magistrate Bruce Cornell, in his official capacity as Webster County Magistrate, Defendants.

No. C 00–3074–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Dec. 5, 2000.

Blake Parker, Blake Parker law Office, Fort Dodge, IA, for plaintiff.

Pamela Griebel, Assist. Iowa Atty. Gen., Des Moines, IA, for defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT CORNELL'S MOTION TO DISMISS**

BENNET, Chief Judge.

## TABLE OF CONTENTS

I.   INTRODUCTION ....................................................1179
II.  LEGAL ANALYSIS ..................................................1179

    A.   Judicial Immunity ............................................................... 1179
        1.   The scope of judicial immunity ...................................... 1180
        2.   Non-judicial acts ....................................................... 1182
        3.   Clear absence of all jurisdiction .................................... 1184
        4.   Relief sought ........................................................... 1185
    B.   Additional Grounds For Dismissal ................................... 1186
III.  CONCLUSION ................................................................ 1186

## I. INTRODUCTION

This matter comes before the court pursuant to defendant Bruce Cornell's October 13, 2000, motion to dismiss the count against him in this action pursuant to 42 U.S.C. § 1983. In the pertinent count, the second in the complaint filed September 18, 2000, plaintiff Linsey Kay Howell alleges that defendant Cornell, in his capacity as a Magistrate in the Iowa District Court for Webster County, prepared and had signed a Preliminary Information charging Howell with contempt upon her failure to appear in court or to pay a fine on a citation for failure to wear a seatbelt and that Magistrate Cornell then issued a warrant for Howell's arrest on the contempt charge. Howell alleges that, pursuant to the warrant, she was illegally arrested and held in jail for five days until released upon a writ of *habeas corpus*. In a general prayer for relief, which apparently pertains to both causes of action in her complaint, Howell seeks declaratory judgment—to the effect that Magistrate Cornell, as well as the defendants on her first cause of action, violated her rights—actual and punitive damages, costs and attorney's fees, and such other relief as the court deems appropriate.

Magistrate Cornell seeks to dismiss the claim against him, by pre-answer motion filed October 13, 2000, on the grounds that he is shielded by Eleventh Amendment immunity and absolute judicial immunity, and on the further ground that this court is without jurisdiction to hear Howell's claim against him under the *Rooker–Feldman* doctrine. Howell resisted Magistrate Cornell's motion on October 26, 2000. Magistrate Cornell then filed a reply to Howell's resistance on October 30, 2000. Neither party requested oral arguments on Magistrate Cornell's motion to dismiss, so that the court deems this matter fully submitted.

## II. LEGAL ANALYSIS

### A. Judicial Immunity

In support of his contention that absolute judicial immunity bars Howell's claim against him, Magistrate Cornell contends that Howell's claim is based on judicial orders and an arrest warrant he issued in state court criminal and contempt proceedings. He contends further that magistrates in Iowa district courts have jurisdiction over misdemeanor criminal offenses and contempt actions pursuant to Iowa Code §§ 602.6405 and 665.2, respectively. Thus, he contends that the subject matter of Howell's claim against him falls squarely within the scope of his duties as a state magistrate and that, even if he exceeded his jurisdiction or acted illegally, he is not stripped of judicial immunity, because he did not act in the clear absence of all jurisdiction.

Howell counters that Cornell's actions in initiating and prosecuting the contempt action against her were administrative, not judicial, in nature. She contends that *Liles v. Reagan*, 804 F.2d 493 (8th Cir. 1986)—in which the Eighth Circuit Court of Appeals held, *inter alia*, that "[h]olding contempt proceedings, finding a party in contempt, and ruling on a motion for recusal are all acts normally performed by a judge"—is distinguishable on the ground that *Liles* involved a "direct" contempt in front of the court, while only an "indirect" contempt occurred in this case. She contends that preparing a Preliminary Information and issuing a warrant in a contempt action against her were administrative actions to collect a fine, not judicial acts or the performance of judicial functions.

### 1. The scope of judicial immunity

■ "Judges performing judicial functions enjoy absolute immunity from § 1983 liability." *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir.1994); *see also Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997) (quoting *Robinson*); *Callahan v. Rendlen*, 806 F.2d 795, 796 (8th Cir.1986) ("[J]udicial immunity protects a judicial officer from civil suits seeking money damages, including those suits initiated under 42 U.S.C. § 1983."). Indeed, " '[a]s a class, judges have long enjoyed a comparatively sweeping form of immunity....' " *Duffy v. Wolle*, 123 F.3d 1026, 1034 (8th Cir.1997) (quoting *Forrester v. White*, 484 U.S. 219, 225, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)), *cert. denied*, 523 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998). As the Eighth Circuit Court of Appeals has explained,

> This absolute immunity from suit allows judges to fulfill their duties without concern for their own fortunes, which helps to ensure that their duties will be performed impartially and completely. *See* [*Forrester*, 484 U.S.] at 223–24, 108 S.Ct. at 541–42. Judicial immunity does not derive from the persona of the judge, however, but rather from the judicial acts performed by the judge. Accordingly, while judges enjoy absolute immunity when performing "paradigmatic judicial acts involved in resolving disputes between parties who have invoked the jurisdiction of a court," *id.* at 227, 108 S.Ct. at 544 "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." *Id.* at 228, 108 S.Ct. at 544.

*Duffy*, 123 F.3d at 1034. Similarly, although the Supreme Court noted that "[u]nfairness and injustice to a litigant may result on occasion" from the rule that judges are generally immune from suits for money damages, " 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' " *Mireles v. Waco*, 502 U.S. 9, 10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (*per curiam*) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871)).

More specifically, the United States Supreme Court has explained the scope and limits of judicial immunity as follows:

> Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. *Pierson v. Ray*, 386 U.S. at 554, 87 S.Ct. at 1218 ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). *See also Harlow v. Fitzgerald*, 457 U.S. 800, 815–819, 102 S.Ct. 2727, 2736–2739, 73 L.Ed.2d 396 (1982) (allegations of malice are insufficient to overcome qualified immunity).
>
> Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. *Forrester v. White*, 484 U.S. at 227–229, 108 S.Ct. at 544–545; *Stump v. Sparkman*, 435 U.S. at 360, 98 S.Ct. at 1106. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id.* at 356–357, 98 S.Ct. at 1104–1105; *Bradley v. Fisher*, 13 Wall., at 351.

*Mireles*, 502 U.S. at 11–12, 112 S.Ct. 286; *accord Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir.1994) (recognizing only two circumstances in which a judge may be sued for money damages: "nonjudicial acts" and "actions taken in the complete absence of all jurisdiction"); *Liles v. Reagan*, 804 F.2d 493, 495 (8th

Cir.1986) (pre-*Mireles* case applying the same two-part test for determining whether a judge is absolutely immune from liability in a civil damage action under § 1983, citing *Stump v. Sparkman*, 435 U.S. 349, 355–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)).

In *Mireles*, a case in which the plaintiff public defender alleged that a judge, angered by the plaintiff's absence from the courtroom at the call of his case, had ordered police officers to bring him forcibly to the courtroom, *see id.* at 10, 112 S.Ct. 286, the Supreme Court also considered the applicability of the two exceptions to judicial immunity:

> We conclude that the Court of Appeals erred in ruling that Judge Mireles' alleged actions were not taken in his judicial capacity. This Court in *Stump* made clear that "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." 435 U.S. at 362, 98 S.Ct. at 1108. *See also Forrester v. White*, 484 U.S. at 227–229, 108 S.Ct. at 544–545. A judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge. See generally Cal.Civ.Proc.Code Ann. §§ 128, 177, 187 (West 1982 and Supp. 1991) (setting forth broad powers of state judges in the conduct of proceedings). Waco, who was called into the courtroom for purposes of a pending case, was dealing with Judge Mireles in the judge's judicial capacity.

> Of course, a judge's direction to police officers to carry out a judicial order with excessive force is not a "function normally performed by a judge." *Stump v. Sparkman*, 435 U.S. at 362, 98 S.Ct. at 1108. But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally per-

formed by a judge. If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error ... or was in excess of his authority." *Id.*, at 356, 98 S.Ct. at 1105. *See also Forrester v. White*, 484 U.S. at 227, 108 S.Ct. at 544 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"). Accordingly, as the language in *Stump* indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself." 435 U.S. at 362, 98 S.Ct. at 1108. In other words, we look to the particular act's relation to a general function normally performed by a judge, in this case the function of directing police officers to bring counsel in a pending case before the court.

> Nor does the fact that Judge Mireles' order was carried out by police officers somehow transform his action from "judicial" to "executive" in character. As *Forrester* instructs, it is "the nature of the function performed, not the identity of the actor who performed it, that inform[s] our immunity analysis." 484 U.S. at 229, 108 S.Ct. at 545. A judge's direction to an executive officer to bring counsel before the court is no more executive in character than a judge's issuance of a warrant for an executive officer to search a home. *See Burns v. Reed*, 500 U.S. 478, 492, 111 S.Ct. 1934, 1941, 114 L.Ed.2d 547 (1991) ("[T]he issuance of a search warrant is unquestionably a judicial act").

Because the Court of Appeals concluded that Judge Mireles did not act in his judicial capacity, the court did not reach the second part of the immunity inquiry: whether Judge Mireles' actions were taken in the complete absence of all jurisdiction. We have little trouble concluding that they were not. If Judge Mireles authorized and ratified the police officers' use of excessive force, he acted in excess of his authority. But such an action—taken in the very aid of the judge's jurisdiction over a matter

before him—cannot be said to have been taken in the absence of jurisdiction. *Mireles*, 502 U.S. at 12–13, 112 S.Ct. 286 (footnote omitted); *see also Duty*, 42 F.3d at 462–63 (also finding that a judge acted in his judicial capacity in issuing an arrest warrant, because Arkansas law vests municipal judges with the power to issue arrest warrants, and finding that the judge did not act in the absence of jurisdiction, but only in excess of his jurisdiction, where the municipal judge was authorized to issue arrest warrants, even if he did not have the authority to enforce a circuit court's judgment); *Liles*, 804 F.2d at 495 (concluding that "[h]olding contempt proceedings, finding a party in contempt, and ruling on a motion for recusal are all acts normally performed by a judge," and that the actions in question were not taken in the clear absence of all jurisdiction, even if arguably incorrect or in excess of jurisdiction). In light of these conclusions, the Supreme Court reversed the decision of the Circuit Court of Appeals, which had held that the judge had no immunity. *Id.* at 13, 112 S.Ct. 286; *see also Duty*, 42 F.3d at 463 (reversing the district court and remanding with directions to sustain a motion for summary judgment on the ground of absolute judicial immunity and to enter judgment in the judge's favor); *Liles*, 804 F.2d at 495 (affirming dismissal on the ground of judicial immunity).

Like the Court in *Mireles*, this court must consider whether Magistrate Cornell's actions fall within either of the exceptions to judicial immunity.

### 2. Non-judicial acts

▪ Howell argues that Magistrate Cornell's actions in initiating and prosecuting the contempt action against her were administrative, not judicial, in nature—that is, Howell contends that the actions were undertaken merely for the administrative purpose of collecting the fine against her. Again, the test of whether an act in question is a "judicial act" entitled to immunity " 'relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the

expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.' " *Mireles*, 502 U.S. at 12, 112 S.Ct. 286 (quoting *Stump*, 435 U.S. at 362, 98 S.Ct. 1099). In contrast, actions such as terminating judicial employees are merely "administrative" actions that are not cloaked in judicial immunity. *See Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (demotion and dismissal of a probation officer was not a judicial act cloaked in judicial immunity); *Meek v. County of Riverside*, 183 F.3d 962, 967–68 (9th Cir.1999).

There is some authority for the proposition that initiating contempt proceedings is *not* —or *may not be* —a "judicial act," and thus may not be protected by the shield of judicial immunity. For example, in *Barnes v. Winchell*, 105 F.3d 1111 (6th Cir.1997), the Sixth Circuit Court of Appeals noted that, in *Sevier v. Turner*, 742 F.2d 262 (6th Cir.1984), *Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir.), *cert. denied*, 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980), and *Harper v. Merckle*, 638 F.2d 848 (5th Cir.), *cert. denied*, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981), courts had held that "prosecutorial" functions, such as initiating criminal and civil contempt proceedings, were not "judicial acts." *Barnes*, 105 F.3d at 1116–18. However, as the court in *Barnes* explained, this "prosecutorial functions" exception to judicial immunity is a narrow one, and "even if a judge encroaches upon prosecutorial functions, the broad shield of absolute immunity is not automatically overcome." *Id.* at 1119. The court explained as follows:

> As demonstrated in *Harris [v. Deveaux*, 780 F.2d 911 (11th Cir.1986) ], a judge can still be acting in a judicial capacity for immunity purposes when undertaking seemingly prosecutorial functions in a case brought before the judge independently by the parties. Thus, the protection afforded by absolute judicial immunity is not foreclosed when an action, even if prosecutorial in nature, re-

lates to a function normally performed by a judge or where the parties are dealing with the judge in his judicial capacity. *See Mireles*, 502 U.S. at 12–13, 112 S.Ct. at 288–89.

*Barnes*, 105 F.3d at 1119. Thus, in *Barnes*, the court concluded that a distinguishing factor was whether the judge, "patently motivated by private interests and without involving a prosecutor, initiated criminal charges against persons who did not have any case then pending before the judg[e], and then, in highly irregular proceedings, passed judgment upon such charges," a situation in which there was no judicial immunity, and the situation in which other parties "invoked the jurisdiction of the [court], thereby setting the judicial machinery in motion," a situation in which judicial immunity remained intact. *Id.*

Moreover, in *Figueroa v. Blackburn*, 208 F.3d 435 (3d Cir.2000), the Third Circuit Court of Appeals concluded that, even where the power of a judge to order immediate service of a sentence for contempt is restricted by state law, a judge's order that the claimant be imprisoned immediately for contempt "did not alter the judicial nature of the act." *Figueroa*, 208 F.3d at 443. Rather, drawing upon the factors identified in *Stump*, the Third Circuit Court of Appeals found that "[t]here can be little doubt that holding an individual in contempt is an act normally performed by a judge." *Id.* (citing cases holding that the acts of citing and incarcerating a party for contempt, even summarily, is a judicial act, where the court has subject matter jurisdiction over the charge); *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999) ("presiding over a traffic citation and contempt hearing and issuance of a bench warrant for the plaintiff's arrest were certainly judicial acts under this two prong inquiry" of function and expectation from *Mireles* and *Stump*, because ruling on violations of municipal ordinances are functions normally performed by a judge and the defendant, in such an action, deals with the judge in his or her judicial capacity).

Here, the actions upon which Howell's claim against Magistrate Cornell is based were "function[s] normally performed by a judge," that is, initiating contempt proceedings and issuing a warrant upon a party's failure to appear for trial. *Mireles*, 502 U.S. at 12, 112 S.Ct. 286; *Figueroa*, 208 F.3d at 443; *DePiero*, 180 F.3d at 784. Similarly, there can be little doubt that Magistrate Cornell was acting in his judicial capacity performing judicial functions, even if his actions in initiating the contempt proceeding and issuing an arrest warrant encroached upon prosecutorial functions. *See Barnes*, 105 F.3d at 1119. The action from which the contempt charge arose was one initiated by other parties, that is, a traffic citation brought by a deputy sheriff. *See id.* Thus, the contempt proceeding arose out of an action in which other parties "invoked the jurisdiction of the [court], thereby setting the judicial machinery in motion." *Id.* According to Howell's complaint, Magistrate Cornell only initiated a contempt proceeding when Howell failed to pay the fine or appear for trial on the seatbelt citation. Thus, even if initiating the contempt proceeding was "prosecutorial in nature," the contempt "relate[d] to a function normally performed by a judge," the hearing of a contested traffic citation, and the parties were dealing with Magistrate Cornell in his judicial capacity as a magistrate. *Id.*; *accord Mireles*, 502 U.S. at 12, 112 S.Ct. 286; *Stump*, 435 U.S. at 362, 98 S.Ct. 1099.

Finally, the court rejects Howell's contention that the purpose of the contempt charge was merely administrative, that is, to collect the fine against her. Rather, the purpose of contempt proceedings against persons who fail to comply with court orders, such as the order for Howell to pay the fine or appear for trial on the seatbelt citation, is to vindicate the authority of the court. *Hicks v. Feiock*, 485 U.S. 624, 631, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911); *see also Maness v. Meyers*, 419 U.S. 449, 459, 95 S.Ct. 584, 42 L.Ed.2d 574

(1975) ("The orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings,'" and persons who fail to obey court orders may be cited for contempt) (quoting *United States v. United Mine Workers*, 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884 (1947)). Therefore, initiating a contempt action upon Howell's failure to comply with an order to appear was, by its nature, a "function normally performed by a judge," and in keeping with the "expectations of the parties" who were "deal[ing] with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12, 112 S.Ct. 286 (internal quotation marks omitted). Initiation of the contempt charge had everything to do with the court's *judicial* business, and was not merely an "administrative" action that pertained only to the operations of the court and its support staff. *Compare Forrester*, 484 U.S. at 219, 108 S.Ct. 538 (demotion and dismissal of a probation officer was an "administrative," not "judicial," act and therefore was not cloaked in judicial immunity); *Meek*, 183 F.3d at 967–68.

Thus, Howell's contention that Magistrate Cornell's conduct fits the "non-judicial acts" exception to judicial immunity fails.

### 3. Clear absence of all jurisdiction

■ Nor did Magistrate Cornell act in the clear absence of all jurisdiction. *See Mireles*, 502 U.S. at 12, 112 S.Ct. 286 (second prong of the judicial immunity inquiry). As the Supreme Court explained in *Stump*, the scope of a judge's jurisdiction "must be construed broadly where the issue is the immunity of the judge." *Stump*, 435 U.S. at 356, 98 S.Ct. 1099. Thus, "[a] judge will not be deprived of immunity because the action he took is in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 356–57, 98 S.Ct. 1099 (quoting *Brad-*

*ley*, 80 U.S. (13 Wall.) at 351). As the Court explained further, there is a difference between an act "in excess of jurisdiction," and one "in the absence of jurisdiction":

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 357 n. 7, 98 S.Ct. 1099.

Magistrate Cornell did not act in the absence of all jurisdiction. First, magistrates in the state of Iowa have general subject matter jurisdiction over both misdemeanor criminal matters, Iowa Code § 602.6405, and over contempt proceedings, including contempt proceedings based upon failure to comply with a court order. *See* Iowa Code § 665.2(3) (defining acts or omissions that "are punishable as [contempts] by any of the courts of this state, or by any judicial officer, including judicial magistrates, acting in the discharge of an official duty" as including "illegal resistance to any order or process made or issued by [the court]"). Second, as the Supreme Court has suggested, any procedural violations by Magistrate Cornell in initiating the contempt proceedings and issuing a warrant for Howell's arrest do not strip him of judicial immunity, because judicial immunity extends even to a judge who, in exercising his or her authority, commits "grave procedural errors." *Stump*, 435 U.S. at 359, 98 S.Ct. 1099. The Tenth Circuit Court of Appeals more recently concluded that a finding by a reviewing court that an order by a judge or party acting with adjudicative authority is invalid because of failure to follow proper state procedure "is of little consequence to the ... immunity" of a party asserting judicial or quasi-judicial immunity. *See Whitesel v. Sengenberger*, 222 F.3d 861,

868 (10th Cir.2000). The question is whether the party asserting immunity "acted within the general subject matter of their jurisdiction," so that, if parties are authorized, for example, by statute, to address the subject matter at issue, a court entertaining a subsequent § 1983 action "cannot conclude they acted in 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump,* 435 U.S. at 356, 98 S.Ct. 1099, and citing cases); *accord Gallas v. Supreme Court of Pennsylvania,* 211 F.3d 760, 771 (3d Cir.2000) ("a judge does not act in the clear absence of all jurisdiction when the judge enters an order at least colorably within the jurisdiction of her court even though a court rule or other procedural constraint" would have barred the judge from issuing the order). This court concluded just above that Magistrate Cornell had general subject matter jurisdiction over contempt proceedings pursuant to Iowa law, Iowa Code § 665.2; *see Whitesel,* 222 F.3d at 868, and now concludes that Magistrate Cornell acted, at least colorably, within that jurisdiction when he took the actions on which Howell's claim against him is premised. *Gallas,* 211 F.3d at 771.

At most, Magistrate Cornell acted in excess of his jurisdiction by failing to follow the precise procedural requirements of Iowa Code § 665.7. If Magistrate Cornell did not follow the proper procedures to institute the contempt proceeding against Howell upon her failure to appear for scheduled judicial proceedings, he acted in excess of his authority, "[b]ut such an action—taken in the very aid of the judge's jurisdiction over a matter before him— cannot be said to have been taken in the absence of jurisdiction." *Mireles,* 502 U.S. at 12–13, 112 S.Ct. 286; *Stump,* 435 U.S. at 359, 98 S.Ct. 1099 (judicial immunity extends even to a judge who, in exercising his or her authority, commits "grave procedural errors"). Thus, Howell has not overcome Magistrate Cornell's judicial immunity on the ground that the acts in question were taken in the clear absence of all jurisdiction.

Nor does the limited jurisdiction of a state magistrate, as compared to the general jurisdiction of state district judges, require a different standard for judicial immunity. In *Figueroa v. Blackburn,* 208 F.3d 435 (3d Cir.2000), the Third Circuit Court of Appeals rejected the suggestion that judges of courts of limited jurisdiction, such as municipal court judges, are entitled to judicial immunity *only if* they acted *within* their jurisdiction. The Third Circuit Court of Appeals pointed out that suggestions that distinctions should be made between judges of limited jurisdiction and those of general jurisdiction for purposes of judicial immunity in *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871), and *Randall v. Brigham,* 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868), were *dicta* in cases decided over one hundred years ago, had never been adopted by the Supreme Court, and were not indicative of how the Supreme Court would view the issue today. *Figueroa,* 208 F.3d at 441. Thus, no different rule, which might limit the scope of a state magistrate's immunity to actions within, not in excess of, his jurisdiction, applies to the judicial immunity of Magistrate Cornell, as a judicial officer with limited jurisdiction.

### 4. *Relief sought*

In addition or in the alternative to her claim for money damages, Howell apparently seeks declaratory relief on her claim against Magistrate Cornell. Although judicial immunity does not bar prospective injunctive relief, *see Pulliam v. Allen,* 466 U.S. 522, 541–42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), there is no indication in this case that Magistrate Cornell's allegedly illegal conduct is likely to recur or that no adequate remedy at law exists. *See Sterling v. Calvin,* 874 F.2d 571, 572 (8th Cir.1989) *(per curiam )* (prerequisites to obtaining injunctive relief). The state district court granted Howell's application for a writ of *habeas corpus,* and in so doing, concluded that Magistrate Cornell failed to follow the procedural requirements stated in Iowa Code § 665.7, and thereby violated Howell's procedural due process rights. *See* Plaintiff's Exhibit 3 to

Resistance To Judge Cornell's Motion To Dismiss (*Linsey Kay Howell v. Sheriff of Webster County,* No. LACV–307295, Order on Petition for Writ of Habeas Corpus, slip op. at 3 (Iowa Dist.Ct. May 23, 2000)). Thus, Magistrate Cornell has already been advised of the illegality of his actions by the Iowa District Court's ruling, making any recurrence highly unlikely. Similarly, the declaratory judgment Howell seeks concerning the illegality of Magistrate Cornell's actions has already been rendered by the same *habeas corpus* ruling. Moreover, the court does not find that Howell has specifically asserted that her claim for declaratory relief overcomes Magistrate Cornell's assertion of judicial immunity. Thus, the court concludes that the nature of the relief sought in this case does not raise any exception to Magistrate Cornell's assertion of judicial immunity.

Consequently, the court finds that Howell's claim against Magistrate Cornell must be dismissed, as Magistrate Cornell enjoys absolute judicial immunity to such a claim. *Mireles,* 502 U.S. at 11, 112 S.Ct. 286 ("judicial immunity is an immunity from suit, not just from ultimate assessment of damages") (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

### B. Additional Grounds For Dismissal

As the court noted at the outset, judicial immunity is but one of the grounds for dismissal that Magistrate Cornell asserts to the claim against him in the present action. However, because judicial immunity bars Howell's claim against Magistrate Cornell, the court need not reach Magistrate Cornell's contentions concerning Eleventh Amendment immunity or the *Rooker–Feldman* doctrine.

### III. CONCLUSION

Magistrate Cornell enjoys absolute judicial immunity to the claim against him in this action pursuant to 42 U.S.C. § 1983. Consequently, Magistrate Cornell's Octo-

ber 13, 2000, motion to dismiss the count against him is **granted.**

**IT IS SO ORDERED.**